FILED
DISTRICT CLERK OF
JEFFERSON CO TEXAS
8/11/2022 3:07 PM
JAMIE SMITH
DISTRICT CLERK
B-210176

CAUSE NO. _____

| | | |
|---|---|---|
| **KATHRYN ACHANE, et al.** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| *v.* | § | |
| | § | |
| **EFG GENERAL PARTNER CORP.,** | § | |
| **EDUCATION FUTURES** | § | |
| **MANAGEMENT, COMPANY,** | § | **JEFFERSON COUNTY, TEXAS** |
| **EDUCATION FUTURES GROUP, LLC,** | § | |
| **COMPUTER CAREER CENTER, L.P.** | § | |
| **D/B/A VISTA COLLEGE, JIM** | § | |
| **TOLBERT,** | § | |
| | § | |
| *Defendants.* | § | **_____ JUDICIAL DISTRICT** |

## MASTER CONSOLIDATED PETITION AND JURY DEMAND

**TO THE HONORABLE JUDGE OF SAID COURT:**

Plaintiffs Kathryn Achane, Natasha Adams, Kayla Anderson, Pamela Anderson, Deanna Ardoin, Karita Ardoin, Ashley Arline, Leann Ball, Armarillo Banks, Shavonne Barideaux, Faelyn Barry, Shirrelle Bennett, Michael Berry, Seirra Bryant, Andrea Bryant, Bridget Bussinger, Miguel Caniz, Tamara Caniz, Dewona Carter, Shawndrea Champagne, Tierany Clayton, Elisa Coleman, Christopher Collins, Melvin Cooper, Warren Craig, Jr., Brandi Davis, Maria Deloach, Tamaron Gibbs, Melika Griffin, LaDonna Grubbs, Chelza Handy, Gabriel Hatford, Jennifer Hennigan, Shawn Henry, Deltra Hill, Shakema Holman, Leslie Jackson, Jasmine James, De'ashley Joiner, Stacy Jones, Merissa Laffitte, Brittany Marrow, Dawn Mouton, Raven Nerl, Austin Newman, Barbara Ortiz, Dikesha Overstreet, Angel Ramirez, Cheyenne Roberts, Kiomara Rodriguez Aquino, Jaslynn Samuel, Joslynn Samuel, Amy Sanagustin, Paydon Schall, Michaella Scott, Laci Shobe, Tiffani Smith, Natira Smith, Aimee Stanley, Hayleigh Sutton, Stacey Talmore, Sunshine Theus, Gwenda Thomas, Taylor Williams, Tony Wilson, Felice Wright, Stephanie Wright, Ashley Yancey (collectively, "Plaintiffs") complain of the actions of the Defendants **EFG GENERAL**

PARTNER CORP. (hereinafter "EFG General"), **EDUCATION FUTURES GROUP, LLC** (hereinafter "EFG"), **EDUCATION FUTURES MANAGEMENT, COMPANY** (hereinafter "EFM"), **COMPUTER CAREER CENTER, L.P. D/B/A VISTA COLLEGE** (hereinafter "CCC"), and **JIM TOLBERT** (hereinafter "Tolbert"), (all defendants when referred to collectively hereinafter are called "Defendants"), as follows:

<u>**PARTIES**</u>

1.      Plaintiff, Kathryn Achane, is a citizen of Texas and resident of Beaumont, Jefferson County, Texas.

2.      Plaintiff, Natasha Adams, is a citizen of Texas and resident of Jasper, Jasper County, Texas.

3.      Plaintiff, Kayla Anderson, is a citizen of Texas and resident of Beaumont, Jefferson County, Texas.

4.      Plaintiff, Pamela Anderson, is a citizen of Texas and resident of Beaumont, Jefferson, Texas.

5.      Plaintiff, Deanna Ardoin, is a citizen of Texas and resident of Beaumont, Jefferson County, Texas.

6.      Plaintiff, Karita Ardoin, is a citizen of Texas and resident of Beaumont, Jefferson County, Texas.

7.      Plaintiff, Ashley Arline, is a citizen of Texas and resident of Woodville, Tyler County, Texas.

8.      Plaintiff, Leann Ball, is a citizen of Texas and resident of Winne, Chambers County, Texas.

9.      Plaintiff, Amarillo Banks, is a citizen of Texas and resident of Beaumont, Jefferson County, Texas.

10.     Plaintiff, Shavonne Barideaux, is a citizen of Texas and resident of Port Arthur, Jefferson County, Texas.

11.     Plaintiff, Faelyn Barry, is a citizen of Texas and resident of Beaumont, Jefferson County, Texas.

12.     Plaintiff, Shirrelle Bennett, is a citizen of Texas and resident of Beaumont, Jefferson County, Texas.

13.     Plaintiff, Michael Berry, is a citizen of Texas and resident of Port Arthur, Jefferson County, Texas.

14.     Plaintiff, Seirra Bryant, is a citizen of Texas and resident of Nederland, Jefferson County, Texas.

15.     Plaintiff, Andrea Bryant, is a citizen of Texas and resident of Beaumont, Jefferson County, Texas.

16.     Plaintiff, Bridget Bussinger, is a citizen of Texas and resident of Beaumont, Jefferson County, Texas.

17.     Plaintiff, Miguel Caniz, is a citizen of Texas and resident of Beaumont, Jefferson County, Texas.

18.     Plaintiff, Tamara Caniz, is a citizen of Texas and resident of Beaumont, Jefferson County, Texas.

19.     Plaintiff, Dewona Carter, is a citizen of Texas and resident of Beaumont, Jefferson County, Texas.

20.     Plaintiff, Shawndrea Champagne, is a citizen of Texas and resident of Beaumont, Jefferson County, Texas.

21.     Plaintiff, Tierany Clayton, is a citizen of Texas and resident of Port Arthur, Jefferson County, Texas.

22.     Plaintiff, Elisa Coleman, is a citizen of Texas and resident of Beaumont, Jefferson County, Texas.

23.     Plaintiff, Christopher Collins, is a citizen of Texas and resident of Beaumont, Jefferson County, Texas.

24.     Plaintiff, Melvin Cooper, is a citizen of Texas and resident of Beaumont, Jefferson County, Texas.

25.     Plaintiff, Warren Craig, Jr., is a citizen of Texas and resident of Beaumont, Jefferson County, Texas.

26.     Plaintiff, Brandi Davis, is a citizen of Texas and resident of Beaumont, Jefferson County, Texas.

27.     Plaintiff, Maria Deloach, is a citizen of Texas and resident of Old River-Winfree, Chambers County, Texas.

28.     Plaintiff, Tamaron Gibbs, is a citizen of Texas and resident of Beaumont, Jefferson County, Texas.

29.     Plaintiff, Melika Griffin, is a citizen of Texas and resident of Beaumont, Jefferson County, Texas.

30.     Plaintiff, LaDonna Grubbs, is a citizen of Texas and resident of Silsbee, Hardin County, Texas.

31.     Plaintiff, Chelza Handy, is a citizen of Texas and resident of Beaumont, Jefferson County, Texas.

32.     Plaintiff, Gabriel Hatford, is a citizen of Texas and resident of Beaumont, Jefferson County, Texas.

33.     Plaintiff, Jennifer Hennigan, is a citizen of Texas and resident of Groves, Jefferson County, Texas.

34.     Plaintiff, Shawn Henry, is a citizen of Texas and resident of Beaumont, Jefferson County, Texas.

35.     Plaintiff, Deltra Hill, is a citizen of Texas and resident of Beaumont, Jefferson County, Texas.

36.     Plaintiff, Shakema Holman, is a citizen of Texas and resident of Beaumont, Jefferson County, Texas.

37.     Plaintiff, Leslie Jackson, is a citizen of Texas and resident of Vidor, Orange County, Texas.

38.     Plaintiff, Jasmine James, is a citizen of Texas and resident of Beaumont, Jefferson County, Texas.

39.     Plaintiff, De'ashley Joiner, is a citizen of Texas and resident of Beaumont, Jefferson County, Texas.

40.     Plaintiff, Stacy Jones, is a citizen of Texas and resident of Beaumont, Jefferson County, Texas.

41.     Plaintiff, Merissa Laffitte, is a citizen of Texas and resident of Jasper, Jasper County, Texas.

42.     Plaintiff, Brittany Marrow, is a citizen of Texas and resident of Beaumont, Jefferson County, Texas.

43.     Plaintiff, Dawn Mouton, is a citizen of Texas and resident of Beaumont, Jefferson County, Texas.

44.     Plaintiff, Raven Nerl, is a citizen of Texas and resident of Beaumont, Jefferson County, Texas.

45.     Plaintiff, Austin Newman, is a citizen of Texas and resident of Beaumont, Jefferson County, Texas.

46.     Plaintiff, Barbara Ortiz, is a citizen of Texas and resident of Beaumont, Jefferson County, Texas.

47.     Plaintiff, Dikesha Overstreet, is a citizen of Texas and resident of Beaumont, Jefferson County, Texas.

48.     Plaintiff, Angel Ramirez, is a citizen of Texas and resident of Beaumont, Jefferson County, Texas.

49.     Plaintiff, Cheyenne Roberts, is a citizen of Texas and resident of Beaumont, Jefferson County, Texas.

50.     Plaintiff, Kiomara Rodriguez Aquino, is a citizen of Texas and resident of Beaumont, Jefferson County, Texas.

51.     Plaintiff, Jaslynn Samuel, is a citizen of Texas and resident of Jasper, Jasper County, Texas.

52.     Plaintiff, Joslynn Samuel, is a citizen of Texas and resident of Jasper, Jasper County, Texas.

53.    Plaintiff, Amy Sanagustin, is a citizen of Texas and resident of Port Arthur, Jefferson County, Texas.

54.    Plaintiff, Paydon Schall, is a citizen of Texas and resident of Beaumont, Jefferson County, Texas.

55.    Plaintiff, Michaella Scott, is a citizen of Texas and resident of Silsbee, Hardin County, Texas.

56.    Plaintiff, Laci Shobe, is a citizen of Texas and resident of Port Neches, Jefferson County, Texas.

57.    Plaintiff, Tiffani Smith, is a citizen of Texas and resident of Port Arthur, Jefferson County, Texas.

58.    Plaintiff, Natira Smith, is a citizen of Texas and resident of Port Neches, Jefferson County, Texas.

59.    Plaintiff, Aimee Stanley, is a citizen of Texas and resident of Jasper, Jasper County, Texas.

60.    Plaintiff, Hayleigh Sutton, is a citizen of Texas and resident of Rose City, Orange County, Texas.

61.    Plaintiff, Stacey Talmore, is a citizen of Texas and resident of Beaumont, Jefferson County, Texas.

62.    Plaintiff, Sunshine Theus, is a citizen of Texas and resident of Beaumont, Jefferson County, Texas.

63.    Plaintiff, Gwenda Thomas, is a citizen of Texas and resident of Beaumont, Jefferson County, Texas.

64.     Plaintiff, Taylor Williams, is a citizen of Texas and resident of Beaumont, Jefferson County, Texas.

65.     Plaintiff, Tony Wilson, is a citizen of Texas and resident of Hampshire, Jefferson County, Texas.

66.     Plaintiff, Felice Wright, is a citizen of Texas and resident of Orange, Orange County, Texas.

67.     Plaintiff, Stephanie Wright, is a citizen of Texas and resident of Beaumont, Jefferson County, Texas.

68.     Plaintiff, Ashley Yancey, is a citizen of Texas and resident of Daisetta, Liberty County, Texas.

69.     Defendant **CCC** is a corporation organized and existing under the laws of Delaware with a principal place of business in Richardson, Texas. CCC is deemed a Texas citizen and essentially at home in Texas.  At all relevant times, **CCC** was a company that provided educational services throughout Texas. **CCC** may be served with citation by serving its registered agent, C T CORPORATION SYSTEM at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

70.     Defendant **EFG** is a limited liability company authorized to do business in the State of Texas, with a principal place of business in Dallas, Texas.  EFG is deemed a Texas citizen and essentially at home in Texas.  At all relevant times, **EFG** was a company that provided educational services throughout Texas. **EFG** may be served with citation at their principal place of business, 300 N Coit Road, Suite 1400, Richardson, Texas 75080-5459.

71.     Defendant **EFG General** is a corporation organized and existing under the laws of Delaware with a principal place of business in Dallas, Texas.  EFG General is deemed a Texas citizen and essentially at home in Texas.  At all relevant times, **EFG General** was a company that

provided educational services throughout Texas. **EFG General** may be served with citation by serving its registered agent, C T CORPORATION SYSTEM at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

72.    Defendant **EFM** is a corporation organized and existing under the laws of Delaware with a principal place of business in Richardson, Texas.  EFM is deemed a Texas citizen and essentially at home in Texas.  At all relevant times, **EFM** was a company that provided educational services throughout Texas. **EFM** may be served with citation at their principal place of business, 300 N Coit Road, Suite 1400, Richardson, Texas 75080-5459.

73.    Defendant **TOLBERT** is the Chief Executive Officer of Defendant **EFG, EFG General, EFM, and/or CCC**. Defendant **TOLBERT** is and was a Texas citizen at all material times and can be served with process through CCC's registered agent, C T CORPORATION SYSTEM at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

## DISCOVERY CONTROL PLAN

74.    For purposes of Rule 190.4, Plaintiffs allege that this matter is intended to be conducted under Discovery Level 3 in accordance with Texas Rules of Civil Procedure 190.4.

## VENUE, JURISDICTION, AND THESE CLAIMS ARE NOT PROPOSED TO BE TRIED JOINTLY

75.    Venue is proper in Jefferson County, Texas, pursuant to Section 15.002(a)(1) of the TEXAS CIVIL PRACTICE AND REMEDIES CODE. in that all, or a substantial part of, the events or omissions giving rise to the cause of action occurred in Jefferson County, Texas.

76.    At all times relevant to this case, Defendants had an agent or transacted business in the State of Texas, including Jefferson County, Texas. All named Plaintiffs are Texas residents who, at the time of enrollment, lived in the following Texas counties: Chambers County, Hardin County, Jasper County, Jefferson County, Liberty County, Orange County, and Tyler County.

Moreover, Plaintiffs all attended the Vista College campus located in Beaumont, Jefferson County, Texas. Plaintiffs suffered economic damages, personal injuries, property damages, loss of wages, relocation expenses, and/or other damages to be specified at the time of trial in Jefferson County as a result of the campus closures and breach of enrollment agreement(s) made the basis of this lawsuit—all which occurred in Jefferson County, Texas.

77.     This Court has personal jurisdiction over Defendants because at all relevant times, they conducted business in Jefferson County, Texas. The causes of action asserted arose from, or are substantially connected with, purposeful acts committed by Defendants in Texas because Defendants executed its contracts and conducted business within the State of Texas. Defendants' negligence and/or gross negligence while conducting their business within the State of Texas is the basis of the Plaintiffs' causes of action.

78.     Defendants are subject to personal jurisdiction in Texas under, *inter alia*, the "specific jurisdiction" test because they intentionally availed themselves of the protection of Texas laws by doing business within Texas, have the requisite minimum contacts with Texas, and because the claims made the basis of this lawsuit arise from Defendants' business activities – namely the ownership and/or operation of Vista College schools – within Texas. Defendants could reasonably anticipate being hailed into a Texas court, and this Court's exercise of jurisdiction over Defendants does not offend the notions of fair play or substantial justice. Defendants are at home in the State of Texas.

79.     Defendant Tolbert is the Chief Executive Officer of Defendant EFG, EFG General, EFM, and/or CCC. Defendant Tolbert resided in Texas at all material times; thus, Defendant Tolbert is and was a Texas citizen at all material times and for jurisdictional purposes.

80.     The Court has jurisdiction over Defendant **EFG** because this defendant is a limited liability company that engages in business in the State of Texas and one or more of its members were citizen(s) of the State of Texas at all material times; thus, Defendant **EFG** is a Texas citizen for jurisdictional purposes.

81.     There is a lack of diversity among the parties since Plaintiffs and some or all of Defendants are citizens of the State of Texas.  As such, removal of this action to federal court is *per se* improper.

82.     This is neither a class action, nor a mass action, under the "Class Action Fairness Act" ("CAFA"). No class allegations are brought herein, and no class certification is sought. Federal jurisdiction—including alleged jurisdiction under CAFA—is wholly lacking, and any removal would be in bad faith. Specifically, and without limitation, this is not a proposed class action and CAFA excludes cases under the "discretionary exception," the "local controversy exception," and the "home-state controversy exception," all of which would apply here were this petition misread to be under CAFA.[1] The claims herein are governed by the laws of Texas, are pleaded in good faith based on the facts of the in-state explosions, and are brought in a forum with a district nexus to all Plaintiffs, the alleged harm, and Defendants.

83.     This also is not a mass action under CAFA. Plaintiffs do <u>not</u> propose to try their claims jointly (or with any other similar claims, for that matter), and expressly disavow any interpretation of this Petition to the contrary. To be clear, Plaintiffs do NOT propose to try all these cases jointly together (or with any other cases). Instead, Plaintiffs suggest these claims may be "consolidated or coordinated solely for pretrial proceedings" consistent with CAFA 28 U.S.C. § 1332(d)(11)(B)(i) & § 1332(d)(11)(B)(ii)(II), (IV). Finally, Plaintiffs specifically aver that "all of

---

[1] *See* 28 U.S.C. Section 1332(d)(3).

the claims in the action arise from an event or occurrence in the State in which the action was filed, and that allegedly resulted in injuries in that State or in States contiguous to that State" consistent with CAFA's § 1332(d)(11)(B)(ii)(I). Any attempt to remove this petition under CAFA is in direct contravention to these specific allegations rejecting CAFA removal jurisdiction and brought in bad faith.

84.     Notably, Defendants are Texas-based, non-diverse Defendants who reside, are headquartered, formed under the laws of, and/or at home in Texas and, as such, are subject to Texas state court jurisdiction as "local defendants."

## NATURE OF THE CASE

85.     Plaintiffs were enrolled at Texas-based Vista College located in Beaumont, Jefferson County, Texas, when the campus abruptly closed on or about October 8, 2021.  The gravamen of Plaintiffs' complaint is that Defendants induced student enrollment, lied or misrepresented material facts to their students, failed to provide educational services despite contractual obligations, and failed to perform other services and/or provide tuition refunds.

86.     Plaintiffs seek damages for failing to receive the benefit of the bargain with respect to the contracts in place, as well as damages for the acts of omission and/or commission outlined herein.

## BACKGROUND

### A.  What is Vista College?

87.     Defendants EFG, EFG General, EFM, and/or CCC own and operate seven (7) Vista College 'ground campuses' with one (1) in Fort Smith, Arkansas, one (1) in Las Cruces, New Mexico, and five (5) in Texas: Beaumont, El Paso, College Station, Killeen, and Longview.

Plaintiffs are Texas citizens involving the campus closure of the Texas-based Vista College campus located in Beaumont, Texas.

88.     According to Vista College's 2021 catalog, Vista College's mission is "*to provide high quality, specialized career preparation or enhancement. Vista College recognizes this is an era of accelerated changes and accepts the responsibility to aid its students in preparation for these changes by providing quality education and career guidance relative to the demands of an evolving workplace.*"    Vista College provided students with dozens of diplomas, license, certificates, and/or degree programs throughout their campuses. The courses, tuition, and fees vary depending on the campus, course title, number of hours, term, and other factors.   The following tables illustrate various courses, tuitions rates, and expenses:

| Programs | Credential / Weeks | Credit Hours | Tuition | Textbook | Toolkit* | Registration Fee | Total Tuition |
|---|---|---|---|---|---|---|---|
| Business Administration (Traditional) | Associate / 75 | 105 | $39,242 | $350 | N/A | $100 | $39,692 |
| Business Administration (Distance Education) | Associate / 75 | 105 | $39,242 | $350 | N/A | $100 | $39,692 |
| Criminal Justice | Associate / 70 | 115 | $39,340 | $350 | N/A | $100 | $39,790 |
| Construction Management | Associate / 70 | 105 | $38,683 | $350 | $600 | $100 | $39,733 |
| Information Technology (IT) (Traditional) | Associate / 70 | 98 | $37,917 | $325 | $500 | $100 | $38,842 |
| Information Technology (IT) (Distance Education) | Associate / 70 | 98 | $37,917 | $325 | $500 | $100 | $38,842 |
| Medical Assisting (Traditional) | Associate / 75 | 105 | $39,350 | $350 | N/A | $100 | $39,800 |
| Medical Assisting (Distance Education) | Associate / 75 | 105 | $39,350 | $350 | N/A | $100 | $39,800 |
| Medical Insurance Billing & Coding (MIBC) (Traditional) | Associate / 80 | 111 | $41,975 | $350 | N/A | $100 | $42,425 |
| Medical Insurance Billing & Coding (MIBC) (Distance Education) | Associate / 80 | 111 | $41,975 | $350 | N/A | $100 | $42,425 |
| Medical Laboratory Technician | Associate / 75 | 114 | $41,875 | $325 | N/A | $100 | $42,300 |
| Paralegal | Associate / 70 | 98 | $39,250 | $350 | N/A | $100 | $39,700 |
| Trades Management – Heating, Ventilation, & Air Conditioning (HVAC) | Associate / 80 | 118 | $40,250 | $350 | N/A | $100 | $40,700 |
| Business Administration (Traditional) | Diploma / 40 | 52 | $22,200 | $200 | N/A | $100 | $22,500 |
| Business Administration (Distance Education) | Diploma / 40 | 52 | $22,200 | $200 | N/A | $100 | $22,500 |
| Construction Technology | Diploma / 40 | 52 | $20,250 | $200 | $600 | $100 | $21,150 |
| Dental Assistant | Diploma / 45 | 57 | $22,500 | $200 | N/A | $100 | $22,800 |
| Electrical Technician | Diploma / 50 | 65 | $21,500 | $250 | $773 | $100 | $22,623 |

| Heating, Ventilation, & Air Conditioning (HVAC) | Diploma / 50 | 65 | $23,000 | $250 | $750 | $100 | $24,100 |
|---|---|---|---|---|---|---|---|
| Information Technology (IT) (Traditional) | Diploma / 40 | 52 | $20,500 | $175 | $500 | $100 | $21,275 |
| Information Technology (IT) (Distance Education) | Diploma / 40 | 52 | $20,500 | $175 | $500 | $100 | $21,275 |
| Medical Administrative Assistant (Distance Education) | Diploma / 40 | 52 | $16,225 | $175 | N/A | $100 | $16,500 |
| Medical Assisting (Traditional) | Diploma / 45 | 58 | $25,200 | $200 | N/A | $100 | $25,500 |
| Medical Assisting (Distance Education) | Diploma / 45 | 58 | $25,200 | $200 | N/A | $100 | $25,500 |
| Medical Assisting for Spanish Speakers (Traditional) | Diploma / 45 | 76 | $25,200 | $200 | N/A | $100 | $25,500 |
| Medical Assisting for Spanish Speakers (Hybrid) | Diploma / 45 | 76 | $25,200 | $200 | N/A | $100 | $25,500 |
| Medical Insurance Billing & Coding (MIBC) (Traditional) | Diploma / 50 | 65 | $24,200 | $200 | N/A | $100 | $24,500 |
| Medical Insurance Billing & Coding (MIBC) (Distance Education) | Diploma / 50 | 65 | $24,200 | $200 | N/A | $100 | $24,500 |
| Pharmacy Technician (Traditional) | Diploma / 50 | 60 | $14,250 | $150 | N/A | $100 | $14,500 |
| Pharmacy Technician (Hybrid) | Diploma / 50 | 60 | $14,250 | $150 | N/A | $100 | $14,500 |
| Vocational Nurse (D) | Diploma / 60 | 73 | $31,000 | $400 | N/A | $100 | $31,500 |
| Vocational Nurse (E) | Diploma / 75 | 73 | $31,000 | $400 | N/A | $100 | $31,500 |

| Clock Hour Programs | Credential / Weeks | Clock Hours | Tuition | Textbook | Toolkit* | Registration Fee | Total Tuition |
|---|---|---|---|---|---|---|---|
| Cosmetology | Certificate / 40 | 1,000 | $12,900 | $750 | $1,250 | $100 | $15,000 |
| Cosmetology (teachout) | Certificate / 44 (D) and 60 (E) | 1,500 | $19,000 | $750 | $1,250 | $100 | $21,100 |
| Non-Title IV Programs | Credential / Weeks | Credit Hours | Tuition | Textbook | Toolkit* | Registration Fee | Total Tuition |
| Nurse Aide Training | Certificate / 5 | 4 | $750 | N/A | N/A | N/A | $750 |
| Phlebotomy for Healthcare Professionals Seminar | Certificate / 2.5 | 3 | $500 | N/A | N/A | N/A | $500 |

---

[2] This chart is from Vista College's 2021 Texas Student Catalog.

89.    Defendant Tolbert was the Chief Executive Officer of Vista College at the time of closure.   Upon reason and belief, Defendant Tolbert communicated with the students – both personally and/or in the Student Catalog:

### Welcome from the Chief Executive Officer

*Vista College has just completed its fourteenth year of operation, and it gives me a chance to reflect on our success. Success doesn't just happen. Success is the result of a plan that is made and followed. Unfortunately, too many students have been led to believe that all they need for a successful and happy future is a diploma. This belief has resulted in disappointment for hundreds of capable graduates. Today it is important that every person be self-reliant. Our personal and national economies demand it. How then should people plan to assure themselves the greatest possibilities for happy and successful futures? There are three simple but vitally related factors that are essential but too frequently ignored: interest, demand and potential growth.*

*The most important item to remember in planning your future is that you must start with your interests. If you are interested in something, you will enjoy learning about it today and doing it tomorrow. Once you've spent your time and money on education, it is important there be a demand for the services in which you were trained. Finally, explore the growth potential in the field you select and be sure the field will meet your expectations. Ambitious men and women properly trained do not want to stagnate; they want to progress and grow.*

*The entire structure of our busy world depends largely upon properly trained medical, trades and office personnel for successful operation. By recognizing the need to continue your education, you have taken the first step in becoming a marketable individual. You have recognized the need to possess certain necessary skills if you are to compete in the rapidly changing job market. Business and industry thrives because of motivated people like you who want to contribute to the growth of our nation.*

*Vista College provides students with the opportunity to learn traditional concepts in the areas of medicine, trades, and business. I personally challenge you to be the best that you can be. Not only while attending Vista College, but also when you enter the job market as a graduate.*

*At Vista College, students are in a unique community. Our philosophy is that each student is an integral part in the success of our school. Every student has individual needs and wants. We will treat you with the respect and dignity you deserve. Our goal is to make every student proud to be a part of Vista College. Our rewards will come from your accomplishments and success obtained from your education. We want to be your educational family. Remember, you are the school!*

*If you consider yourself a motivated individual who sees the world as exciting and challenging, I invite you to explore this catalog and consider Vista College as your means to become an integral part of our ever-changing and competitive world.*

ALL INFORMATION CONTAINED IN THIS STUDENT CATALOG IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.

*Jim Tolbert*

Jim Tolbert
Chief Executive Officer                                                                                         3

Tolbert made additional representations (indirectly or directly) to the students, through direct or school communications, about students graduating and receiving the services for which Plaintiff and others paid but did not receive.   Tolbert made these representations from his office in Texas, and made them to, *inter alia*, students and others throughout the State of Texas.

---

[3] (emphasis added). *Id.*

### b. The Closure of Vista College

90.    In August 2021, Defendants announced its plans to stop enrollment of new students – the decision to transition to 'online only' was made, in part, because of inadequate finances, student population decline, changing regulations, and mismanagement.  As a result of this 'fundamental shift', Defendants' executives perpetrated an email message to its students that – in part – provided: "*We will continue to offer the courses you need to graduate from your programs, including students who started their programs in August 2021… Most students in good academic standing who are currently active at the campuses will have the opportunity to complete their programs and should not experience significant changes to their educational experience. You will continue to receive quality academic programs academic, financial aid, student services and career placement support.*"  Upon information and belief, all Defendants—including Tolbert—drafted, ratified, approved, published, and/or participated in these communications.

91.    Also, in August 2021, Defendant Tolbert held a Zoom meeting with faculty members at each campus.  In said meeting, Defendant Tolbert informed the majority of faculty members that they were furloughed effective immediately.  Despite knowing their schools were in clear and present danger of ceasing operation, Defendant Tolbert doubled down on College Station's local news station, KBTX (at Texas-based company) by stating while in Texas that, "the reason we did that [suspended in-person enrollment for ground campuses] is to make sure we had all the financial resources at our disposal to make sure the students currently enrolled in school get exactly what the paid for."[4]  That, of course, did not happen as Defendants shut down all campuses and programs without notice to students on October 8, 2021.  Tolbert had made yet another promise to the students that he and Defendants failed to keep.

---

[4] *See* https://www.kbtx.com/2021/08/10/vista-college-suspends-in-person-enrollment-furloughs-employees-across-texas/.

92.    Plaintiffs received the below message from Defendants drafted and/or perpetrated by Defendant Tolbert:

## Vista College Closure

Vista College Students,

Vista College has made the difficult decision to cease all operations effective with the close of Business on October 8th 2021. Although we are in compliance with both accreditation and state/federal regulations we are unable to continue due to financial circumstances.

We apologize for the sudden notice but due to unforeseen events we could not continue with the new term on Oct 11th nor continue the current nursing term.

We realize the challenges this causes for students and we have been working to identify potential transfer colleges and schools to complete your degrees. Please monitor the Vista College Website, www.vistacollege.edu, as we will be posting important information to the website.

Defendants' decision to abruptly close their campuses down betrayed thousands of students and teachers.  Students were stripped of their opportunity to complete their programs.  These students paid thousands of dollars towards their programs and/or took out student loans and remain in debt. Thus, many of these students still owe money to their loan servicer(s) despite losing the opportunity to obtain their degree, certificate, and/or diploma.  Teachers unexpectedly lost their employment.  Moreover, students' education and careers were upended, delayed, and/or damaged.

93.    The *same week as campus closures*, The Federal Trade Commission placed Vista College, along with dozens of other for-profit schools, on their "List of October 2021 Recipients of the FTC's Notice of Penalty Offenses in the Higher Education Marketplace."  The Commission stated in a press release, "The Federal Trade Commission put 70 for-profit higher education institutions on notice that the agency is cracking down on any false promises they make about their graduates' job and earnings prospects and other outcomes and will hit violators with significant

financial penalties."[5]  The FTC Chair stated in said press release, ""For too long, unscrupulous for-profit schools have preyed on students with impunity, facing no penalties when they defraud their students and drive them into debt," said FTC Chair Lina M. Khan. "The FTC is resurrecting a dormant authority to deter wrongdoing and hold accountable bad actors who abuse students and taxpayers.""[6]

## BRIEF SUMMARY OF THE CLAIMS AND REMEDIES SOUGHT

94.    Defendants' denial and refusal to remain open long enough for Plaintiffs to complete their program and/or course constitutes a breach of contract because Defendants, through the contract with Plaintiffs were contractually obligated to provide what was paid for.

95.    Defendants' denial and refusal to (1) remain open long enough for Plaintiffs to complete their program and/or course, and (2) refund Plaintiffs' tuition costs constitute a breach of contract because Defendants, through the contract with Plaintiffs, were contractually obligated to provide what was paid for.  Defendants failed to honor and breached its contractual obligations to Plaintiffs, resulting in harm and damages to Plaintiffs.

96.    In refusing to (1) remain open long enough for Plaintiffs to complete their program and/or course, and (2) refund Plaintiffs' tuition costs, Defendants breached the covenant of good faith and fair dealing and acted in bad faith towards Plaintiffs.  Defendants' conduct demonstrates that their denial of tuition refund was prompted not by honest mistake, bad judgment or negligence, but rather by conscious and deliberate conduct which unfairly frustrated the agreed common purposes and disappointed the reasonable expectations of consumers/students such as Plaintiffs thereby depriving Plaintiffs of the benefits of their course and/or program they purchased in reliance on Defendants' representations, advertisements, and marketing.

---

[5] *See* https://www.ftc.gov/news-events/press-releases/2021/10/ftc-targets-false-claims-profit-colleges.
[6] *Id.*

97.    As shown, Defendants negligently and/or intentionally lead Plaintiffs to believe they would be able to complete their programs and receive their diplomas, degrees and/or certificate before closure.  Moreover, Defendants negligently and/or intentionally lead Plaintiffs to believe *if* the campus closed down, Defendants would reimburse Plaintiffs for all costs. Plaintiffs relied on those representations and continued to pay their tuition and other educational costs.  Defendants then knowingly and intentionally closed down all campuses, denying Plaintiffs their opportunity to complete their course and/or program.  Plaintiffs were injured as a result of Defendants' behavior.

98.    Through written materials and oral communications, Defendants represented (1) Vista College would continue to offer Plaintiffs the courses needed to graduate; (2) Plaintiffs would not experience significant changes to their educational experience; (3) Plaintiffs would be able to complete their programs before campus closures and/or graduate; (4) Plaintiffs would obtain employment as a result of course and/or program completion; (5) in the event of an early campus closure, Defendants would reimburse Plaintiffs their tuition and costs; (6) guaranteed or promised jobs and/or job placement that never occurred and/or (7) guaranteed or promised salary levels or ranges that never materialized; (8) failed and/or refused to make credits transferrable and/or otherwise ensure that those courses completed or near completion could be adequately transferred or completed at other equivalent institutions with a accreditation; and (9) other acts and/or omissions to be stated after discovery or at the time of trial.  Defendants' misrepresentations were made in the course of Defendants' business and were made with a purpose to affect the financial decisions of Plaintiffs (all of whom are "consumers" under DTPA and other Texas law). Defendants' misrepresentations were objectively material to Plaintiffs and the reasonable consumer.    Defendants    failed    to    exercise    reasonable    care    in    communicating    these

misrepresentations and Plaintiffs were damaged as a proximate cause thereof.  Importantly, Defendants benefitted monetarily as a result of these misrepresentations.

99.     The misrepresentations, communications, lies, and misleading statements mentioned above were made – in part – by Defendant Jim Tolbert, a Texas citizen, and made, *inter alia,* while in Texas, to Texas citizens, and using Texas media.

100.    A fiduciary duty, created by law and/or contract, existed between Plaintiffs and Defendants at the time of campus closures.  Defendants breached their fiduciary duty by their actions set forth herein and Plaintiffs were injured as a result.  Defendants benefitted from their breach by collecting the tuition of Plaintiffs, then refusing to pay it back, and closing down all campuses to save overhead expenses.

101.    Defendants committed several violations under the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA").   At all material times, Plaintiffs constitute "consumers" as defined in TEX. BUS. & COM. CODE §17.46(A)(4).  Defendants knowingly and intentionally committed these DTPA violations. As a result of Defendants' noncompliance with the DTPA, Plaintiffs are entitled to economic damages, which include the amount of the benefits wrongly withheld.  For knowing conduct violations, Plaintiffs ask for three times their economic damages.  For intentional conduct violations, Plaintiffs are entitled to their economic damages, and Plaintiffs ask for three times their amount of economic damages.  Plaintiffs are also entitled to court costs and attorney's fees. TEX. BUS. & COM. CODE ANN. §17.50(b)(1).

102.    As a result of the conduct set forth herein, Defendants have been, and will continue to be unjustly enriched at the expense of Plaintiffs.

## FIRST GROUP OF CAUSES OF ACTION
### (Breach of Contract including the Breach of Expressed Terms and the Implied Terms – Breach of the Covenant of Good Faith and Fair Dealing)

103.    The preceding factual statements and allegations are incorporated by reference.

104.    Contracts existed between Plaintiffs and Defendants.  Plaintiffs entered into agreements with Vista College for various programs and/or courses.

105.    Under each contract, Plaintiffs were required to pay the amount of each program and/or course referenced in each contract.  Plaintiffs' contracts were in full force and effect at the time Defendants closed down their campus.

106.    All conditions precedent to Defendants' obligation were satisfied.

107.    Defendants breached the terms of their contracts with Plaintiffs by failing to provide them with the promised products and services as contracted. Moreover, Defendants' failure to provide adequate refunds constitute as a breach.

108.    Plaintiffs have sustained actual damages as the result of Defendants' breach of contract.

109.    In misrepresenting through its representations that Vista College would remain open through Plaintiffs' scheduled curriculum, and in abruptly closing down all of its' campuses without ensuring a smooth transition of credits or courses to other schools, Defendants breached and failed to honor its implied covenant of good faith and fair dealing under Texas law.

110.    The law implies a covenant of good faith and fair dealing in every contract. Defendants violated this covenant of good faith and fair dealing in its contract with Plaintiffs by, *inter alia*, misrepresenting to Plaintiffs that their campus would remain open (at least) through the courses currently in progress.  Despite these representations, Defendants closed down Plaintiffs' campus with no forewarnings.

111.    Defendants breached their duty of good faith and fair dealing and acted in bad faith in the following respects:

a.  Representing through its advertising, marketing, and other representations that the campuses would not close down until (at the earliest) the completion of Plaintiffs' curriculum.

b.  Acting in such a manner as to damage Plaintiffs and/or committing acts which unjustifiably denied Plaintiffs the benefits to which they were entitled under the Contract.

c.  Failing to provide full and complete training and/or education, as stated in the Contract.

d.  Failing to provide full reimbursement(s) for any and all tuition and costs to Plaintiffs after abruptly closing down their campus.

e.  Failing to provide adequate notice to Plaintiffs that their campus would close down.

f.  Failing to attempt in good faith to compromise Plaintiffs for their lost money and/or time towards their program(s).

g.  Failing to ensure a smooth transition of Plaintiffs' credits or courses to other institutions.

112.    Defendants' bad-faith denial of Plaintiffs training and/or education was done as part of Defendants' business practices.  Defendants' wrongful conduct was authorized and ratified by its management and was done with disregard of Plaintiffs' rights.  Such conduct was done to take advantage of the financially weaker or vulnerable position of Plaintiffs and constitutes a pattern or

practice of misconduct through trickery or deceit to deny Plaintiffs the benefit of their training and/or education.

113.    Plaintiffs performed all, or substantially all, of the significant duties required under their agreements with Defendants.

114.    Defendants did not provide and/or unfairly interfered with the rights of Plaintiffs to receive the benefits under their agreements with Defendants.

115.    Defendants acted with oppression and malice, including with conscious and willful disregard of the rights of Plaintiffs and to their harm and detriment. Plaintiffs are accordingly entitled to recovery of exemplary and punitive damages.

### SECOND GROUP OF CAUSES OF ACTION
**(Negligent and Intentional Misrepresentation)**

116.    The preceding factual statements and allegations are incorporated by reference.

117.    Through written materials and oral discussions, Defendants – including Defendant Tolbert – represented, in part, to Plaintiffs their school was remaining open long enough for Plaintiffs to complete their program and/or course and there would be no significant change to their educational experience.  Defendants – including Defendant Tolbert – also represented to Plaintiffs they would be eligible to transfer "up to 75% of the credits required to complete your degree", which is not true.  Moreover, Defendants – including Defendant Tolbert – represented inflated, misleading, and false placement rates for Plaintiffs' programs.

118.    As stated herein, Defendant Tolbert made the following additional misrepresentations while in the State of Texas:

> a.  Email to Plaintiffs from August 2021: "*We will continue to offer the courses you need to graduate from your programs, including students who started their programs in August 2021… Most students in good academic standing who are currently active at the campuses will have the opportunity to complete their*

*programs and should not experience significant changes to their educational experience. You will continue to receive quality academic programs academic, financial aid, student services and career placement support*."

b. August 2021 interview with College Station's local news station: "the reason we did that [suspended in-person enrollment for ground campuses] is to make sure we had all the financial resources at our disposal to make sure the students currently enrolled in school get exactly what the paid for."[7] Defendant Tolbert effectively tells Plaintiffs they will 'get what they paid for' despite informing faculty members the majority of them were immediately furloughed just days before.

c. October 2021 closure statement:



**Vista College Closure**

Vista College Students,

Vista College has made the difficult decision to cease all operations effective with the close of Business on October 8th 2021. Although we are in compliance with both accreditation and state/federal regulations we are unable to continue due to financial circumstances.

We apologize for the sudden notice but due to unforeseen events we could not continue with the new term on Oct 11th nor continue the current nursing term.

We realize the challenges this causes for students and we have been working to identify potential transfer colleges and schools to complete your degrees. Please monitor the Vista College Website, **www.vistacollege.edu**, as we will be posting important information to the website.

119.    Defendants' misrepresentations – including Defendant Tolbert's – were made in the course of the Defendants' business.

---

[7] *See* https://www.kbtx.com/2021/08/10/vista-college-suspends-in-person-enrollment-furloughs-employees-across-texas/.

120.    Defendants' misrepresentations – including Defendant Tolbert's – were supplied and/or conveyed for the purpose of affecting Plaintiffs' financial decisions.

121.    Defendants – including Defendant Tolbert – failed to exercise reasonable care and/or diligence in communicating their misrepresentations, and/or made them intentionally.

122.    Defendants' – including Defendant Tolbert's – misrepresentations were objectively material to the reasonable consumer, and therefore reliance upon such representations may be presumed as a matter of law.

123.    Defendants – including Defendant Tolbert – intended that Plaintiffs would rely on their misrepresentations.

124.    Plaintiffs reasonably and justifiably relied to their detriment on Defendants' – including Defendant Tolbert's – misrepresentations.

125.    As a proximate result of Defendants' – including Defendant Tolbert's – negligent and/or intentional misrepresentations, Plaintiffs were damaged in an amount to be proven at trial.

126.    Defendants directly benefitted from, and were unjustly enriched by, their misrepresentations.

## THIRD CAUSE OF ACTION
### (Breach of Fiduciary Duty)

127.    The preceding factual statements and allegations are incorporated by reference.

128.    At all times relevant to this case, a fiduciary relationship created by law and/or contract existed between Plaintiffs and Defendants.

129.    Defendants breached their fiduciary duties to Plaintiffs when they abruptly closed down their campuses with no warning to Plaintiffs. The students were stripped of their opportunity to complete and/or continue their programs.

130.    Defendants' breach resulted in injury to Plaintiffs.  Plaintiffs lost thousands of dollars, promised jobs, education, and their future.

131.    Defendants benefitted from their breach by collecting the tuition paid for by Plaintiffs, while failing to provide the paid-for product and cutting overhead by closing down all operations.

**FOURTH CAUSE OF ACTION**
**(Violations of the Texas Deceptive Trade**
**Practices Consumer Protection Act ("DTPA"))**

132.    The preceding factual statements and allegations are incorporated by reference.

133.    Defendants' conduct constitutes multiple violations of the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA").  TEX. BUS. & COM. CODE §17.41-17.63.  All violations of this chapter are made actionable by TEX. BUS. & COM. CODE §17.50(a)(1).

134.    At all material times, Plaintiffs were "consumers" as defined in TEX. BUS. & COM. CODE §17.45(4).

135.    Defendants' failure to disclose information concerning goods or services, as described above, which was known at the time of the transaction, and which was intended to induce Plaintiffs into a transaction into which Plaintiffs would not have entered had the information been disclosed, constitutes a false, misleading, or deceptive act and practice.  TEX. BUS. & COM. CODE §17.46(b)(2).

136.    Defendants' misrepresentations and omissions, as described above, caused confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services, constitutes a false, misleading, or deceptive act and practice.  TEX. BUS. & COM. CODE §17.46(b)(7).

137.    Defendants' advertising goods or services with intent not to sell them as advertised, constitutes as a false, misleading, or deceptive act and practice.  TEX. BUS. & COM. CODE §17.46(b)(9).

138.    Defendants' misrepresentations that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law, constitutes as a false, misleading, or deceptive act and practice.  TEX. BUS. & COM. CODE §17.46(b)(12).

139.    Defendants' failure to disclose information concerning goods or services, as described above, which was known at the time of the transaction, and which was intended to induce Plaintiffs into a transaction into which Plaintiffs would not have entered had the information been disclosed, constitutes a false, misleading, or deceptive act and practice.  TEX. BUS. & COM. CODE §17.46(b)(24).

140.    As a result of Defendants' noncompliance with the DTPA, Plaintiffs are entitled to economic damages, which include the amount of the benefits wrongly withheld.

141.    For knowing conduct violations, with regard to these breaches of duty, Plaintiffs ask for three times their economic damages.

142.    For intentional conduct violations, with regard to these breaches of duty, Plaintiffs are entitled to their economic damages, and Plaintiffs ask for three times their amount of economic damages.  Plaintiffs are also entitled to court costs and attorney's fees.  TEX. BUS. & COM. CODE ANN. §17.50(b)(1).

## FIFTH GROUP OF CAUSES OF ACTION
### (*Quantum Meruit*, and Promissory Estoppel)

143.    The preceding factual statements and allegations are incorporated by reference.

144.    Plaintiffs provided valuable services and/or materials to Defendants who accepted the services and/or materials.  Under the circumstances herein, Defendants were notified that Plaintiffs expected to be fully reimbursed and/or provided their programs and/or courses.

145.    Defendants made multiple promises to Plaintiffs described herein.

146.    Plaintiffs reasonably and substantially relied on the promise(s) to their detriment.

147.    Plaintiffs' reliance was foreseeable by Defendants.

148.    Injustice can be avoided only by enforcing Defendants' promise(s) to Plaintiffs.

149.    Defendants directly benefitted from, and were unjustly enriched by, their misrepresentations.

150.    All the foregoing plead and stated in this petition constitute *quantum meruit* and promissory estoppel, for which claims are brought.

## SIXTH CAUSE OF ACTION
### (Unjust Enrichment)

151.    The preceding factual statements and allegations are incorporated by reference.

152.    A party cannot induce, accept or encourage another to furnish or render something of value to such party and avoid payment for the value received.

153.    As a result of the conduct described above, Defendants have been, and will continue to be, unjust enriched at the expense of Plaintiffs.

154.    Defendants have received, and are holding, funds belonging to Plaintiffs which in equity Defendants should not be permitted to keep but should be required to refund Plaintiffs.

## DEMAND FOR TRIAL BY JURY

155.    Plaintiffs hereby demand trial by jury on all claims for which the law provides a right to jury trial.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully request that Defendants be cited to appear and answer this action, and, upon final trial or hearing, judgment be awarded against Defendants in Plaintiffs' favor for:

a.    For general and special damages according to proof at trial;

b.    For general, special, nominal, and compensatory damages including, but not limited to, out-of-pocket expenses, contractual damages, lost wages and/or profits, travel

and/or school-enrollment expenses, mental and emotional distress in an amount according to proof, and all other damages available under Texas law;

c.  For punitive and/or treble damages to be awarded to Plaintiffs in an amount appropriate to punish and set an example of Defendants to deter further misconduct;

d.  For interest on the actual damages at the legal rate from October 12, 2021;

e.  For costs of suit and reasonable attorneys' fees as permitted by law; and

f.  For such other and further relief, including if applicable injunctive relief, restitution, return of tuition, and further relief as the Court may deem just and proper;

g.  For an order providing such further relief, including if applicable injunctive relief, restitution, disgorgement and return of funds collected, and all such other and additional relief as this Court deems proper, at law or in equity, to which Plaintiffs may justly be entitled;

h.  For money damages in an amount to be determined by a jury; and

i.  For general, special, consequential, and nominal damages, as well as other relief, at law or in equity, to which they may be justly entitled.

Respectfully submitted,

**THE FERGUSON LAW FIRM, LLP**

*/s/ Mark C. Sparks*
Mark Sparks
Texas Bar No. 24000273
mark@thefergusonlawfirm.com
Timothy M. Ferguson
Texas Bar No. 24099479
tferguson@thefergusonlawfirm.com
350 Pine Street, Suite 1440
Beaumont, Texas 77701
(409) 832-9700 Phone
(409) 832-9708 Fax

and:

**BAILEY REYES, PLLC**

Christopher A. Bailey
Texas Bar No. 24104549
chris@baileyreyes.com
Julliana Reyes
Texas Bar No. 24103899
julie@baileyreyes.com
2125 Calder Avenue
Beaumont, Texas 77701
(409) 239-0123 Phone
(409) 895-2363 Fax

**ATTORNEYS FOR PLAINTIFFS**